UNITED STATES of America, Plaintiff,

v.

ANY AND ALL RADIO STATION TRANSMISSION EQUIPMENT, ET AL., LOCATED AT 2903 BENT OAK HIGHWAY, ADRIAN, MICHIGAN, Defendant,

Rick Strawcutter, Claimant.

No. 97–CV–73527.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 7, 1998.

Kathryn A. McCarthy, Office of the United States Attorney, Detroit, Michigan, for plaintiff.

Hugh M. Davis, Jr., Patrick M. Edwards, Constitutional Litigation Associates, Detroit, Michigan, for defendant.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

On June 9, 1998 the Plaintiff, the United States of America (the Government), filed a motion for a summary judgment under Fed. R.Civ.P. 56 in this in rem asset forfeiture action that had been filed pursuant to the

Communications Act of 1934 (Communications Act),[1] as amended, 47 U.S.C. §§ 157–614. For the reasons that will be set forth below, the Government's motion is denied and this cause of action is dismissed without prejudice.

## I.

The present cause of action involves an unlicensed FM micro-broadcasting station, known as *Radio Free Lenawee*, in Adrian, Michigan. The Claimant, Rick Strawcutter, is the owner and operator of the radio station, as well as the pastor of the Church of the Lord Jesus Christ, in Adrian, Michigan. Strawcutter describes the format of his radio station as being primarily Christian and politically oriented, asserting that he encourages the presentation of divergent religious and political opinions by inviting persons with opposite viewpoints to appear on the radio broadcasts.

The existence and operation of *Radio Free Lenawee* was brought to the attention of the Federal Communications Commission (FCC) office in Detroit, Michigan between November 4, 1996 and November 13, 1996 as the result of numerous telephone calls, several newspaper clippings, and letters from approximately seven persons. On November 12, 1996, the FCC received a telephone call from the manager of a licensed FM broadcast translator station in Toledo, Ohio[2] who complained that his translator's signal was receiving interference from a station which identified itself as *Radio Free Lenawee*. Two days later, the FCC sent a field agent and an engineer to investigate the complaint. As a result, the FCC determined that an FM station (to wit, *Radio Free Lenawee*) was broadcasting on a 97.7 MHZ frequency from a building at 2903 Bent Oak Highway, Adrian, Michigan[3] without authorization.[4]

On November 18, 1996 Strawcutter informed the FCC, *inter alia*, that he had a constitutional right to conduct his radio broadcasts without interference from the federal government. On November 22, 1996, the FCC determined that Strawcutter's radio station was operating at a level which exceeded the broadcast strength that was allowable under the law for an unlicensed radio station.[5] The FCC agents' efforts to inspect the premises of the radio station were rebuffed by Strawcutter, who was served notice by letter that his *Radio Free Lenawee* broadcasts were in violation of the Communications Act.[6] At the same time, Strawcutter provided the FCC agents with a letter which provided in part that "[a]fter diligent research, [he] has come to a sincerely held conclusion that the [FCC] in reality has no Constitutional [sic] regulatory power over

1. 47 U.S.C. § 609.

2. An FM translator is a low power radio station that receives the signal of a full power station and simultaneously rebroadcasts the signal on a different frequency. These translator stations are licensed by the FCC as a means of improving radio reception in areas that might otherwise be under-served due to distance or terrain obstructions. *See Turro v. F.C.C.*, 859 F.2d 1498, 1499 (D.C.Cir.1988).

3. On the same day, these individuals monitored the translator station from Toledo, but no noticeable interference from Radio Free Lenawee was detected on the translator station's input frequency of 97.7 MHZ or output frequency of 100.7 MHZ.

4. Strawcutter acknowledges that he founded *Radio Free Lenawee* in November 1996, from which he began broadcasting on FM frequency 97.7 MHZ at a power level of between ten and ninety-five watts. However, he submits that, prior to his initial broadcast, a radio engineering firm

was hired by him to research and identify a frequency that would not cause interference with any other broadcast.

5. FCC regulation 47 C.F.R. § 15.239(b) allows unlicensed broadcasts if their emissions do not exceed 250 microvolts/meter at three meters, as measured by average detectors. The emissions detected from Radio Free Lenawee on November 22, 1996 measured 29,625 microvolts/meter at a distance of approximately 0.55 miles.

6. The letter indicated that (1) the station was operating in excess of the emission limitations of 47 C.F.R. § 15.209, (2) an operation of an unlicenced transmitter constitutes a violation of 47 U.S.C. § 301, and (3) an unlicensed operation may subject the operator to the penalties in 47 U.S.C. § 501. The letter closed by (1) informing Strawcutter that his operation of the unlicenced radio station should cease immediately, and (2) requesting that he submit a written statement concerning the circumstances leading to the violation and the steps taken to prevent a recurrence within a period of 10 days thereafter.

FM stations which run a power level less than 100 watts."

Thereafter, the FCC conducted six field tests between November 25, 1997 and February 28, 1997, which established that Strawcutter's radio station continued to operate in excess of the strength allowed by 47 C.F.R. § 15.329 despite remaining unlicensed.

On July 22, 1997, the Government commenced this in rem forfeiture action against the radio transmission equipment at 2903 Bent Oak Highway, Adrian, Michigan, the site of the *Radio Free Lenawee* broadcasts. According to Strawcutter, he first learned of the claimed interference with the Toledo translator station on the following day (July 23, 1997),[7] after which he immediately shut off his radio transmission. Two days later, Strawcutter advised the FCC that he (1) had ceased all transmissions upon learning of the interference, (2) would not commence re-broadcasting until a directional antenna, which would assure no future interference, had been installed, (3) would allow a conditional inspection of Radio Free Lenawee, and (4) believed that his rights under the First Amendment were paramount to the authority of the federal government to deny all non-educational broadcasts under 100 watts.

In response to the FCC's Complaint, Strawcutter filed a claim of ownership on August 5, 1997,[8] which was followed by his answer approximately two weeks later. Since the subject property was never arrested, he and the Government entered into a stipulated Order waiving seizure of the property as a predicate for in rem forfeiture, which was entered by the Court on December 19, 1997.

In his answer to the Complaint, Strawcutter maintains that the FCC's regulation which prohibits unlicensed micro-broadcasting of the type he is engaging in is invalid because it violates (1) the First Amendment, (2) the Equal Protection principles of the Fifth Amendment, (3) the Due Process Clause, (4) the FCC's statutory mandate "to encourage the larger and more effective use of radio in the public interest," 47 U.S.C. § 303(g), and (5) Article XIX of the United Nations Declaration of Human Rights and Article XIX of the International Covenant on Civil and Political Rights.

## II.

Federal Rule of Civil Procedure 56 governs summary judgment motions. Subsection 56(c) provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250, 106 S.Ct. 2505.

In assessing a summary judgment motion, the court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R.Civ.P. 56(c); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984). It is not the court's role to weigh the facts. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36

---

**7.** Although Strawcutter states that he learned of this by reviewing the affidavit attached to the complaint, a discrepancy exists in the record on this point because the Government indicates that it served the complaint upon Strawcutter's attorney two days later, on July 25, 1997.

**8.** He is the only person to have filed such a claim, and the time for filing ownership claims has now expired.

(6th Cir.1987). Rather, the judge's responsibility is to determine "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

## III.

The Communications Act created the FCC and gave it licensing authority over radio broadcasts. 47 U.S.C. §§ 151, 301. It is unlawful to "use or operate any apparatus" that transmits radio signals without a license granted by the FCC.[9] 47 U.S.C. § 301. Additionally, one of the FCC's mandates is to "[s]tudy new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest." 47 U.S.C. § 303(g).

Commensurate with the FCC's licensing responsibility, the Communications Act gives it statutory authority to issue regulations that it deems to be necessary to prevent interference between stations and to carry out the provisions of the Communications Act. 47 U.S.C. §§ 302(a), 303(f). Under these regulations, the FCC grants FM broadcast licenses under four separate classifications (Class A, B, C, and D) which depend upon factors such as transmission power, antenna height, and the area or place from the broadcast is emanating. 47 C.F.R. § 73.210 et seq. Class D licenses were allocated to micro broadcast stations that operated at a power level of less than 100 watts and retained an approximate reception area of between two to twelve miles radius from the point of transmission. However, in 1978 the FCC forbade the issuance of all future Class D licenses, 47 C.F.R. §§ 73.211(a), .511(a), .512(c), effectively eliminating all micro broadcast transmissions. "Except in Alaska, no new Class D applications nor major change applications by existing Class D stations are acceptable for filing except by existing Class D stations seeking to change frequencies." 47 C.F.R. § 73.512(c).

The FCC provides a procedure for seeking a waiver or an amendment of its regulations, as well as for reconsideration of its decisions. 47 C.F.R. §§ 1.3, 1.106. However, Strawcutter contends that those provisions are meaningless to micro broadcasters who seek to obtain an FCC broadcast license because it has not, and will not, grant a license or waive the regulations inhibiting new micro broadcast transmissions. In support of this conclusion, Strawcutter states in his affidavit:

> [p]rior to founding Radio Free Lenawee, I have made three previous attempts to establish low power radio and/or UHF television stations through the FCC guidelines, including utilizing the help of engineers experienced with FCC applications. However, I found it bureaucratically impossible to obtain such licenses from the FCC, even after submitting at least one application for license.

The Government, in its challenge to Strawcutter, has four options to choose from in pursuing those persons who engage in radio broadcasts in contravention of the Communications Act or the FCC regulations. The first three options allow the FCC to: (1) initiate an "in house" money forfeiture, so named because the action that does not require judicial authorization, 47 U.S.C. § 503, (2) seek injunctive relief if an FCC order has not been complied with, 47 U.S.C. §§ 401(a), (b), and (3) bring a criminal action through the federal prosecutor, 47 U.S.C. § 501. The fourth option allows the FCC to bring an action in a district court for any willful or knowing use of a radio frequency without a license or in violation of FCC regulations. 47 U.S.C. § 510(a).

It is this latter provision upon which the Government is relying in bringing this in rem action. The statute provides:

> [a]ny electronic, electromagnetic, radio frequency, or similar device, or component thereof, used, sent, carried, manufactured, assembled, possessed, offered for sale, sold, or advertised with willful and knowing intent to violate section 301 or 302a of

---

**9.** This prohibition is conditioned on the existence of certain circumstances which are not relevant here.

this title, or rules prescribed by the Commission under such sections, may be seized and forfeited to the United States.

47 U.S.C. § 510(a). There is no dispute that, as a factual matter, Strawcutter satisfies the terms of this statute, since he (1) admittedly operated Radio Free Lenawee, and (2) does not have a license. Under governing statutes, a burden shifting analysis applies to this § 510(a) forfeiture proceeding, which only requires the Government to establish a prima facie case. *See* 47 U.S.C. § 510(c)(1); 19 U.S.C. § 1615. Strawcutter does not contest the Government's assertion that these undisputed facts satisfy its prima facie duty to initially establish probable cause. *Id.*

Because the burden of proof lies upon Strawcutter as the claimant, *id.*, the analysis proceeds to whether he can prove a defense to forfeiture by a preponderance of the evidence. *See United States v. One Defender Lobster Vessel Named Betty II*, 606 F.Supp. 32, 36 (S.D.Fla.1984). Strawcutter's defense is that Radio Free Lenawee's broadcasts are lawful because the FCC regulation which prohibits low power or micro-broadcasting, codified at 47 C.F.R. § 73.211(a), is invalid.

In order to evaluate the Government's argument (to wit, this Court does not have jurisdiction to entertain Strawcutter's regulatory challenge), a more detailed review of the regulatory and statutory framework of the Communications Act is required. As indicated above, the FCC's regulations include procedures for obtaining a waiver or amendment of the regulations, as well as for seeking reconsideration of final FCC decisions. 47 C.F.R. §§ 1.3, 1.106. According to the Government, a statute that provides the general rule for judicial review of FCC actions gives the United States Courts of Appeals exclusive jurisdiction to review all orders issued by the FCC, including its decisions on waiver, amendment, or reconsideration requests.

> Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

47 U.S.C. § 402(a). Chapter 158, as amended, comprises sections 2341–2351 of Title 28. Section 2342 states in part:

> [t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
>
> > (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47.

28 U.S.C. § 2342. Reading all these legal provisions in conjunction, the Government asserts that this Court lacks jurisdiction to entertain Strawcutter's regulatory challenge because the only manner for him to have his arguments reviewed is to seek a final decision from the FCC, and then appeal directly to the appropriate Court of Appeals.

Strawcutter, by contrast, argues that this Court does have jurisdiction to entertain his challenge to the relevant FCC regulation. District courts have federal subject matter jurisdiction over asset forfeiture actions pursuant to statutory authority which states:

> [t]he forfeitures provided for in this chapter ... shall be recoverable, except as otherwise provided with respect to a forfeiture penalty determined under section 503(b)(3) of this title, *in a civil suit in the name of the United States brought in the district where the person or carrier has its principal operating office* or in any district through which the line or system of the carrier runs: *Provided,* That any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo ....

47 U.S.C. § 504(a) (emphasis added). Strawcutter asserts that this explicit grant of jurisdiction to the district court necessarily includes the authority and duty to resolve his constitutional challenges to the regulatory authority of the FCC to curtail or control the activities of his radio station. *See also* 47 U.S.C. § 510(b) (district court has jurisdiction over "property").

### IV.

■ Having reviewed the legal issues presented, the Court concludes that the doctrine of primary jurisdiction, which was not raised

by either party, controls the disposition of the Government's motion and the case as presently filed. Generally stated, the primary jurisdiction doctrine provides that:

> in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.

*Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952); *F.C.C. v. ITT World Communications, Inc.*, 466 U.S. 463, 468 n. 5, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984) (identifying this principle as the "doctrine of primary jurisdiction"). As explained by the Supreme Court:

> [t]his is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conference*, 342 U.S. at 574–75, 72 S.Ct. 492.

■ Thus, "where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, *those procedures are to be exclusive.*" *Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965) (emphasis added). This precise situation exists here because the scope and design of the review procedures provided for in the Communications Act imply that the FCC is to be charged with governance over the extremely technical and complex area of radio broadcasting.

Importantly, the primary jurisdiction doctrine applies even though the statutory and regulatory scheme at issue is not by its own terms exclusive. Neither 47 C.F.R. § 1.3 (waiver or amendment) nor 47 U.S.C. § 1.106 (reconsideration) state or even imply that they provide the sole means for attacking FCC regulations. Similarly, the statutory language which grants exclusive jurisdiction in the Courts of Appeals is conditioned upon the existence of a final FCC decision or order. *See* 47 U.S.C. § 402; 28 U.S.C. § 2342(1). The FCC has not issued any order with respect to Strawcutter, *Radio Free Lenawee*, or his radio station.[10] Thus, a

---

**10.** Particularly relevant here is that the FCC is given statutory authority to issue cease and desist orders against unlicensed radio broadcasters such as Strawcutter.

> Where any person (1) has failed to operate substantially as set forth in a license, (2) has violated or failed to observe any of the provisions of this chapter, or section 1304, 1343, or 1464 of Title 18, or (3) has violated or failed to observe any rule or regulation of the [FCC] authorized by this chapter or by a treaty ratified by the United States, *the [FCC] may order such person to cease and desist from such action.*

47 U.S.C. § 312(b) (emphasis added). Before issuing such a cease or desist order the FCC is mandated to first serve upon the person involved an order to show cause, and may issue the final order only after a hearing or its waiver. 47 U.S.C. § 312(c). None of these procedures appear to have been followed in the case at bar. Consequently, the only document the FCC served upon Strawcutter, the letter of November 22, 1996, cannot serve as the FCC order which pursuant to § 402(a) triggers exclusive jurisdiction in the Courts of Appeals.

Based on the present record, the only other discernable theory under which the exclusive jurisdiction of the Courts of Appeals might be invoked is that the FCC issued an "order" within the meaning of § 402(a) when it implemented the regulation that Strawcutter challenges. Unfortunately, § 402(a) neither defines what constitutes an "order" of the FCC nor does that term appear to be defined in any other part of the Communications Act. *Cf.* 47 U.S.C. § 153. However, such an argument appears precluded because § 402(a) indicates that a proceeding to set aside such an order "shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28," and reference to the exclusive jurisdiction statute within chapter 158 demonstrates that an "order" is distinguished from a "regulation." 28 U.S.C. § 2342(1).

More precisely, § 2342(1) has nine subsections, all of which are subject to the exclusive jurisdictional grant to the Courts of Appeals which is contained in the introduction. The first subsection refers to "all *final orders* of the [FCC] made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1) (emphasis added). The cir-

purely facial analysis of the statutory scheme leads to the conclusion that the exclusive jurisdiction in the Courts of Appeals founded in § 402(a) and § 2342(1) does not apply here because no final order has been issued.

■ Nevertheless, the doctrine of primary jurisdiction applies even when the statutory scheme enacted by Congress does not expressly provide that it is the exclusive means for proceeding, especially when the federal agency "has played a vital role in the development" of the nation's laws concerning the relevant subject area, "a role which makes its views of particular benefit to the courts where ultimately the validity of the arrangement will be tested." [11] *Id.* at 421–22, 85 S.Ct. 551; *see also Far East Conference*, 342 U.S. at 575, 72 S.Ct. 492 (significant that presumption of exclusivity, which "accomodat[es] the complementary roles of courts and administrative agencies in the enforcement of law[,] was originally applied in a situation where the face of the statute gave the Interstate Commerce Commission and the *courts concurrent jurisdiction*").

■ Therefore, under the doctrine of primary jurisdiction, Strawcutter is precluded from initially raising his challenges to FCC regulations in any forum other than before the FCC since its regulations provide a means for such review. 47 C.F.R. § 1.3; *see ITT World Communications*, 466 U.S. at 468 n. 5, 104 S.Ct. 1936; *United States v. Neset*, 10 F.Supp.2d 1113, 1114–15 (D.N.D.1998).

■ Importantly, however, the doctrine of primary jurisdiction is as equally applicable to the Government as it is to Strawcutter. In *Far East Conference* the Supreme Court precluded the Government from bringing in the district court an antitrust action in a shipping case because it had not sought initial consideration before the Federal Maritime Board, which had previously been deemed to have exclusive jurisdiction over such matters because of the scope and evident purpose of the Shipping Act. *Far East Conference*, 342 U.S. at 571, 573–76, 72 S.Ct. 492; *United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474, 485, 52 S.Ct. 247, 76 L.Ed. 408 (1932). The Government had attempted to distinguish the previous ruling on the basis that in the prior case the action had been initiated by a private entity. But the Supreme Court ruled that "[t]his difference does not touch the factors that determined the [earlier] case. The same considerations of administrative expertise apply, *whoever initiates the action.*" *Far East Conference*, 342 U.S. at 576, 72 S.Ct. 492 (emphasis added). Since the Government's judicial action requires an inquiry into whether Strawcutter operated without a license in violation of the Communications Act or FCC regulations, matters which are peculiarly within the province and expertise of the FCC, the primary jurisdiction doctrine would appear to prohibit the Government from proceeding here without first obtaining a decision on that issue from the FCC.

The Government seeks to prevail by asserting that the absence of any FCC order should preclude Strawcutter from raising his constitutional challenges to FCC regulations

---

cularity caused by its reference to § 402(a) gives no aid in defining what constitutes an "order" of the FCC. However, review of the other subsections within § 2432 is quite instructive on this issue. Specifically, subsections (2) through (7) alternately refer to "final orders," "regulations," "rules," or "final agency action," either individually or in some combination, depending on the federal agency involved. 28 U.S.C. § 2342(2) through (7). The separate inclusion of the terms "order" and "regulation" within § 2342 implies that these terms are independent and not equivalent because courts construe statutes as a whole in order to give effect to each word used, so that none will be inoperative or superfluous. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *King v. Saint Vincent's Hosp.*, 502 U.S. 215, 221 & n. 10, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); *United States v.*

*Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955); 2A Singer, Sutherland Statutory Construction § 46.06 (5th ed.1992).

11. Interestingly, the Supreme Court indicated that the exhaustion of administrative remedies principle plays a role in establishing the exclusiveness of jurisdiction which is the hallmark of the doctrine of primary jurisdiction.

> [Congress] has enacted a specific statutory scheme for obtaining review, and where [it] has directed such a procedure ... the doctrine of exhaustion of administrative remedies comes into play and requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness.

*Whitney*, 379 U.S. at 422, 85 S.Ct. 551.

in this Court. The Government reasons that the only reason such an order from the FCC is lacking is because Strawcutter has deliberately avoided such a decision by refusing to apply for a waiver or amendment of the FCC regulations. Although the Government's argument has a visceral appeal, its attempt to place upon Strawcutter the responsibility for the absence of an FCC order is in reality only a disingenuous sleight of hand. The Government's position ignores the power of the FCC to issue a cease and desist order to Strawcutter, which for some unexplained reason it chose not to exercise.[12] Since the doctrine of primary jurisdiction applies to the Government just as it does to Strawcutter, it is equally responsible for having failed to obtain a final FCC order.

The Government also argues that district courts only have jurisdiction to entertain statutory, but not regulatory, challenges to FCC authority. This position has been accepted by a district court in Minnesota in which the judge held that 47 U.S.C. § 402 gives exclusive jurisdiction to the courts of appeals to review broad constitutional challenges to FCC regulations. *United States v. Any and All Radio Station Transmission Equip. Located at 1400 Laurel Ave.*, 976 F.Supp. 1255, 1259 (D.Minn.1997).

However, *1400 Laurel* is inapposite from the instant case in that it neither considered nor evaluated the doctrine of primary jurisdiction in its analysis of the issues. Moreover, in making its decision, the *1400 Laurel Ave.* court examined two cases, in which the courts of appeals concluded that 47 U.S.C. § 504(a) is a special review statute that vests jurisdiction over forfeiture actions in the district court while cutting off simultaneous jurisdiction in other courts. *Dougan v. F.C.C.*, 21 F.3d 1488, 1490–91 (9th Cir.1994); *Pleasant Broadcasting v. F.C.C.*, 564 F.2d 496, 500 (D.C.Cir.1977). In this Court's opinion, *1400 Laurel* inadequately distinguished these two cases.

In *Dougan,* the FCC had issued a final forfeiture order against an unlicensed radio broadcaster. *Dougan,* 21 F.3d at 1489. The FCC then sought the enforcement of the forfeiture order in district court pursuant to 47 U.S.C. § 504(a) and, at the same time, challenged the broadcaster's exercise of his right under 47 U.S.C. § 402(a) to seek review of the forfeiture order in the court of appeals. To do so, it argued that the more specific § 504(a) was paramount to the generally applicable § 402(a). *Id.* at 1490.

The Ninth Circuit agreed and dismissed the broadcaster's appeal in favor of having the parties litigate the issue in district court on the Government's § 504(a) enforcement action. *Id.* at 1491. The Court held that § 504(a) "vests exclusive jurisdiction in the district courts to hear enforcement suits by the government, *and* suits by private individuals seeking to avoid enforcement." *Dougan,* 21 F.3d at 1491; *see also Pleasant Broadcasting,* 564 F.2d at 497. It was particularly impressed with the reasoning in *Pleasant Broadcasting,* which had invoked the " 'impressive line of authority' " holding that " 'even where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute.' " *Pleasant Broadcasting,* 564 F.2d at 500–01 (and cases cited therein) (quoting *Investment Co. Institute v. Board of Governors,* 551 F.2d 1270, 1279 (D.C.Cir.1977)); *Dougan,* 21 F.3d at 1490–91.

In addition to *1400 Laurel Ave.* and an unpublished and electronically unreported case that was cited by the Government (to wit, *United States v. Neset,* 10 F.Supp.2d 1113 (D.N.D.1998)) at least one Circuit has adopted its position in this controversy. *Moser v. F.C.C.,* 46 F.3d 970, 973 (9th Cir. 1995). However, the reasoning in *Moser* is not persuasive because it only cites "28 U.S.C. § 2341; 47 U.S.C. § 402(a)"[13] and *ITT World Communications.* as its supporting authorities. *Moser,* 46 F.3d at 973. In *ITT World Communications,* the Supreme Court stated that "[e]xclusive jurisdiction for

---

12. *See supra* note 10.

13. The opinion's citation to "28 U.S.C. § 2341," which is only a brief definition statute applicable to chapter 158, appears to be a mistake. Instead, the opinion appears in substance to be invoking 28 U.S.C. § 2342(1).

review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals. 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a). Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." *ITT World Communications,* 466 U.S. at 468, 104 S.Ct. 1936. This holding is consistent with the language of § 402(a) and § 2342, whose application is limited to situations in which the FCC has issued a final decision. Rather inexplicably, *Moser* finds in these authorities a basis upon which to accept the argument that district courts lack jurisdiction over all challenges to the FCC regulations. Disappointingly, *Moser* makes no mention and does not attempt to distinguish *Dougan,* which was decided by that same court of appeals during the preceding year.

On the other hand, and more persuasive than those cases which were cited by the Government is a recent decision from the Northern District of California which involved facts that are remarkably similar to those in the present cause of action. In *United States v. Dunifer,* 997 F.Supp. 1235, 1237 (N.D.Cal.1998), the Defendant, Stephen Paul Dunifer, operated a micro radio station, "Free Radio Berkeley," without a license. The Government brought an injunctive and declaratory relief action in district court, seeking a ruling that Dunifer was in violation of 47 U.S.C. § 301 by operating a radio station without a license. *Dunifer,* 997 F.Supp. at 1237. Dunifer raised essentially the same arguments as Strawcutter in the case at bar. *Id.* at 1237–38. In response to Dunifer's administrative application, in which he submitted identical arguments as in his district court action, the FCC simultaneously reviewed a monetary forfeiture order that it had issued against him. *Id.* at 1238 & n. 3.

Significantly, the Court invoked the doctrine of primary jurisdiction in issuing a stay until the FCC rendered a final order. *Id.* at

1238. After the FCC upheld the forfeiture order on the basis that its Class D regulations do not violate the First Amendment or its mandate to regulate in the public interest, the Government filed a motion for the entry of a summary judgment in the district court, in which it raised the same argument as in Strawcutter's case. *Id.* The trial judge denied the motion, ruling that 47 U.S.C. § 401(a) granted jurisdiction to the court over any valid defenses that had been asserted by Dunifer.[14] *Id.*

In summary, the application of the primary jurisdiction doctrine does not place any undue burden upon the Government inasmuch as the Communications Act includes a procedure whereby the FCC may issue a cease and desist order which will enable the Government and Strawcutter to present their arguments. 47 U.S.C. § 312(b), (c). Moreover, the purposes behind the doctrine of primary jurisdiction would be served by applying it in the case at bar.

> A rejection of this doctrine here would result in unnecessary duplication and conflicting litigation. Some opponents might participate before the [federal agency]; others might well wait for termination of the [agency's] activities and then sue in the district courts for an injunction accomplishing the same ultimate end. The different records, applications of different standards and conflicting determinations that would surely result from such duplicative procedures all militate in favor of the conclusion that the statutory steps provided in the Act are exclusive.

*Whitney,* 379 U.S. at 422, 85 S.Ct. 551. An application of this doctrine will preclude the Government from seeking the forfeiture of Strawcutter's assets, and will compel Strawcutter to present his arguments to the FCC rather than await an enforcement action in a district court. *See* 47 U.S.C. § 402(g); 5 U.S.C. § 706 (judicial review limited to record). In addition, any judicial tribunal that

---

14. Section 401(a) grants district courts jurisdiction over actions by the Government in which it alleges a failure to comply with the Communications Act.

Although the District Court granted a renewed summary judgment motion by the Government

because Dunifer lacked standing to assert his affirmative defenses, *Dunifer,* 997 F.Supp. at 1239–44, this is not an argument that is presently before this Court in the case at bar.

is called upon to review an order of the FCC will have the record of the administrative proceedings available to it. *See* 47 U.S.C. § 402(d). This procedure will enable a court of review to have the benefit of the FCC's specialized knowledge and expertise in this area, where applicable standards can depend on highly technical radio broadcasting issues such as frequency, signal strength, etc.

When a court applies the doctrine of primary jurisdiction, it may stay its action pending an agency decision or order dismissal of the proceedings before it. *See ITT World Communications,* 466 U.S. at 468 n. 5, 104 S.Ct. 1936; *Far East Conference,* 342 U.S. at 576–77, 72 S.Ct. 492; *Dunifer,* 997 F.Supp. at 1238. A stay is appropriate in those cases in which an administrative proceeding is occurring concurrently with the judicial action. *See Far East Conference,* 342 U.S. at 576–77, 72 S.Ct. 492; *Dunifer,* 997 F.Supp. at 1238 & n. 3. In the case at bar, (1) no administrative proceeding is currently pending, (2) procedures for initiating such a process exist, (3) any final order of the FCC is appealable to a court of appeals, and (4) if no review is sought, the Government may reinstitute an enforcement action. Under such circumstances, "no purpose will here be served to hold the present action in abeyance ... while the proceeding before the [agency] and subsequent judicial review or enforcement of its order are being pursued" because "[a] similar suit is easily initiated later, if appropriate." *Far East Conference,* 342 U.S. at 577, 72 S.Ct. 492.

### V.

Accordingly, for the reasons that have been stated above, the Government's motion for the entry of a summary judgment is denied and, pursuant to the doctrine of primary jurisdiction, this case is dismissed without prejudice.

IT IS SO ORDERED.