UNITED STATES of America,
Plaintiff/Counterdefendant,

v.

ANY AND ALL RADIO STATION TRANS-
MISSION EQUIPMENT, Radio Fre-
quency Power Amplifiers, Radio Fre-
quency Test Equipment and Any Other
Equipment Associated with or Used in
Connection with The Radio Transmis-
sions on Frequency 95.9 Mhz, Located at
3968 West Vernor Highway, Detroit,
Michigan 48216, Defendant,

and Maquina Musical, Inc., a Michigan
corporation, Claimant,

and

Juan V. Marinez, Catalina Martinez, Igna-
cio Campos, Jorge Canchola and Sergio
Vallejo, Intervenor/Counterplaintiffs,

v.

United States of America,
Counterdefendant.

No. 98–CV–74368–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 6, 1998.

Kathryn A. McCarthy, Detroit, MI, for
Plaintiff.

Kevin Ernst, Detroit, MI, for Defendant.

## OPINION

DUGGAN, District Judge.

This matter is before the Court on claimant's [1] motion for a preliminary injunction, and motion to dismiss complaint for forfeiture and to quash *in rem* arrest warrant. The government filed a response in opposition stating that claimant's operation of "Radio Maquina" violates provisions of the Communications Act of 1934 ("Communications Act"), as amended, 47 U.S.C. §§ 157–614. The government, pursuant to 47 U.S.C. § 510(a) of the Communications Act, effected an *ex parte in rem* seizure of the equipment of Radio Maquina. The Court entertained oral argument on claimant's motions on October 29, 1998. For the reasons that follow, the Court denies claimant's motion for a preliminary injunction, motion to dismiss the government's complaint, and motion to quash *in rem* arrest warrant.[2]

Radio Maquina is a "Spanish-language radio station which serves approximately 40,-000 to 50,000 primarily Hispanic listeners within a six-mile radius of its location in southwest Detroit." (Compl. for TRO at 2). Claimant, Pedro Zamora, is the President of Radio Maquina. According to claimant, the radio station began broadcasting on April 1, 1998, from its location at 3968 West Vernor, Detroit, Michigan. The format of Radio Maquina consists of programming broadcast in Spanish and includes "aspects of Hispanic culture, primarily music, news, politics and what is popularly referred to as 'talk-show

radio.'" (Compl. for TRO at 4). Radio Maquina broadcasts at 95.9 MHz on the FM dial, and its signal strength, since its inception, has at all times remained below 100 watts. It is undisputed that Radio Maquina does not presently possess, nor has it ever applied for, a license from the Federal Communications Commission ("FCC").[3]

On April 16, 1998, the Detroit Field office of the FCC received a complaint from an operator of an unlicenced FM broadcast station that another unlicenced broadcast station was operating on the 95.9 MHz frequency. On that date, officials from the FCC visited the station located at 3968 West Vernor Highway, Detroit, Michigan and discerned that the field strength of the FM broadcast signal on the frequency 95.9 MHz exceeded that transmission allowable under non-licensing provisions of the FCC.[4] FCC agents again monitored Radio Maquina, using an MADF vehicle, on April 21, 1998 and detected broadcasting at frequencies which exceeded those allowable under non-licensing provisions.[5] On that date, agents entered the premises of Radio Maquina and spoke with the station's owner, Pedro Zamora. The agents informed Mr. Zamora that the transmissions from his radio station exceeded those permissible under FCC licensing guidelines and constituted a violation of 47 U.S.C. § 301. FCC agents again conducted an investigation of Radio Maquina on May 4, 1998 at which time it was determined that the station was broadcasting at a frequency

1. The pleadings refer to Pedro Zamora and/or Maquina Musical, Inc. as "claimant."

2. The Court denies claimant's motion to quash *in rem* arrest warrant. To the extent claimant moves to quash the arrest warrant on the grounds that he did not receive a hearing, the Court notes that forfeitures under 47 U.S.C. § 510 are governed by the Supplemental Rules for Maritime and Certain Admiralty Claims which expressly provide that a hearing is not required where a forfeiture is initiated for a violation of the United States Code. *See* Supplemental Rule E(4)(f).

3. Pursuant to 47 C.F.R. § 15.329(b), broadcasting without a license is permitted if emissions do not exceed 250 microvolts/meter at three meters, as measured by average detectors.

4. Specifically, the FCC dispatched agents Roger Anderson and Constance Rodgers in an FCC mobile automated direction finding ("MADF") vehicle. An MADF is a vehicle "equipped with radio receivers and other electronic equipment that enables the operator to track and locate the source of radio transmissions." (Anderson Aff. at ¶ 10). The agents determined that the field strength of the FM broadcast signal on the frequency 95.9 MHz exceeded the permitted level for non-licensed broadcasting by 146 times. *Id.* at ¶ 12.

5. On this date, the agents determined that the field strength of the FM broadcast signal on the frequency 95.9 MHz exceeded the allowable transmissions by 8,896 times. (Anderson Aff. at ¶ 14).

exceeding that permissible without a license.[6]

Following the investigations efforts by FCC agents, the Detroit Field office of the FCC sent a letter to Pedro Zamora on May 12, 1998 informing him that the operation of the unlicenced radio station violated 47 U.S.C. § 301 and requesting that he cease operation or face a panoply of penalties.[7] Claimant replied to the FCC's May 12, 1998 communication by demanding a hearing before the FCC prior to the institution of forfeiture proceedings against the radio station. The Detroit Field office of the FCC again dispatched agents on August 19, 1998 to the location of Radio Maquina where the agents determined that the station's broadcast exceeded those levels permissible under non-licensing provisions of the Communications Act.[8] On October 7, 1998, the government filed its verified complaint for forfeiture and an affidavit in support. Subsequent to the filing of the complaint, the government executed a writ of entry and warrant of arrest on October 8, 1998 and seized the defendant property. On October 9, 1998, claimant Pedro Zamora filed the instant verified complaint for temporary restraining order ("TRO") and motion to dismiss complaint for forfeiture and to quash *in rem* arrest warrant. The Court held a hearing on claimant's request for a TRO on October 13, 1998 at which time the Court declined to grant claimant's request but set a hearing on the motion for a preliminary injunction. The matter is currently before the Court on the claimant's motion for a preliminary injunction and claimant's motion to dismiss the verified complaint and to quash the *in rem* arrest warrant.

Claimant is seeking a preliminary injunction to enjoin the government from pursuing the forfeiture of his radio equipment. Claimant also seeks dismissal of the government's verified complaint for civil forfeiture on the grounds that the FCC failed to avail itself of its own administrative remedies prior to instituting the forfeiture action.[9]

In response, the government contends that the forfeiture in this case was an appropriate exercise of the remedies available under the Communications Act for a violation of 47 U.S.C. § 301. According to the government, *in rem* forfeiture is sanctioned by 47 U.S.C. § 510 of the Communications Act. In support of the propriety of forfeiture, the government states that it has set forth probable cause in its pleadings sufficient to subject the property to forfeiture. Therefore, it claims that the burden now shifts to claimant to refute the government's initial showing of probable cause by a preponderance of the evidence. The government contends that claimants have failed, at this early stage of the litigation, to allege the existence of any facts which bear on the issue of probable cause. With respect to the claimant's argument that the regulations prohibiting the issuance of any new Class D licenses constitute an impermissible prior restraint on speech, the government contends that this Court is without jurisdiction to entertain a challenge to FCC regulations. According to the government, jurisdiction to entertain a review of the regulatory provisions of the Communications Act is vested with the United States Courts

---

**6.** On this date, the FCC agents determined that the station's broadcast signal exceeded allowable provisions for field strength by 7,602 times. *Id.* (Anderson Aff. at ¶ 17).

**7.** Specifically, the letter informed claimant that unlicensed operation of a radio station violates 47 U.S.C. § 301. The letter also advised claimant that unlicensed operation may subject the operator to criminal action and that "The equipment also be seized and forfeited to the United States. . . ." The letter advised claimant that the "operation of the unlicensed radio station should be ceased immediately" and that within ten days of receipt of the letter, he should submit a written statement, "concerning the circumstances leading to this violation and the steps you have taken to prevent a recurrence thereof."

**8.** On this date, the FCC agents determined that the station's broadcast signal exceeded allowable FCC provisions for unlicensed broadcast field strength by 2,421 times. (Anderson Aff. at ¶ 21).

**9.** In its response to claimant's motion, the government questions whether claimant's motion is a 12(b)(6) motion to dismiss, or a motion filed pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings. At oral argument on claimant's request for a TRO on October 13, 1998, counsel for claimant indicated to the Court that his "motion to dismiss" is filed pursuant to Fed.R.Civ.P. 12(b)(1) and is a request for the court to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

**396**

of Appeals.[10] *See* 47 U.S.C. § 402(a)–(b); 28 U.S.C. § 2342(1). Therefore, the government contends that claimant's request for a preliminary injunction and motion to dismiss should be denied.

The Court will address the propriety of the issuance of a preliminary injunction and then proceed to a determination of the merits of claimant's motion to dismiss pursuant to FED. R.CIV.P. 12(b)(1).

### Motion for Preliminary Injunction

■ In order to determine whether a party is entitled to the issuance of a preliminary injunction, the district court must consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest. *G & V Lounge, Inc. v. Michigan Liquor Comm'n*, 23 F.3d 1071, 1076 (1994). "None of the factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey–Hayes Co.*, 73 F.3d 648, 653 (6th Cir.1996). The Court will consider the propriety of claimant's request for a preliminary injunction under the criteria set forth by the Sixth Circuit in *G & V Lounge, Inc.*

### 1. Irreparable Harm

Claimant alleges that his First Amendment rights to freedom of speech have been abridged by the government's seizure of his broadcasting equipment. In addition, claimant states that "at issue here is not only the First Amendment right to engage in speech, but also the right to receive speech." (Claimant's Br. at 3). Finally, claimant maintains that other microbroadcasters under the FCC cannot engage in microbroadcasting activities, in connection with or separate from Radio Maquina, without facing imminent risk of confiscations, civil fines and criminal prosecutions.

When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor. With regard to the factor of irreparable injury, for example, it is well-settled that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

*Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). The Court will assume, for purposes of this motion, that claimant's alleged deprivation of his First Amendment right to free speech by the government's seizure of his broadcasting equipment is sufficient to demonstrate irreparable injury. Accordingly, the Court will proceed to the likelihood of claimant's success on the merits.

### 2. Likelihood of Success on Merits

The government contends that claimant's broadcasting of Radio Maquina at frequency 95.9 MHz, without a license from the FCC, is in violation of 47 U.S.C. § 301. 47 U.S.C. § 301 states, in pertinent part:

No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District ... except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.

Claimant does not dispute that he has never applied for, nor does he currently possess, a valid license covering his microbroadcasting activities. Furthermore, he has not availed himself of the FCC's provisions which afford the opportunity for a party to seek waiver or amendment of the regulations. *See* 47 C.F.R. § 1.3. Since claimant does not contend that he has complied with the requirements of § 301,[11] the government contends

---

**10.** The government does not dispute a party's right to challenge the constitutionality of a regulation before the FCC.

**11.** Claimant does not acknowledge a "violation" of § 301. He contends that § 301 and/or the regulation prohibiting the issuance of class D licenses (see fn. 12, *infra*) are unconstitutional.

that the seizure of claimant's radio broadcasting equipment is sanctioned by 47 U.S.C. § 510. 47 U.S.C. § 510 provides, in pertinent part:

> Any property subject to forfeiture to the United States under this section may be seized by the Attorney General of the United States upon process issued pursuant to the supplemental rules for certain admiralty and maritime claims by any district court of the United States having jurisdiction over the property. . . .

47 U.S.C. § 510(b). As 47 U.S.C. § 510 grants authority for forfeiture and vests jurisdiction in the district court, the government contends that the forfeiture in this instance was appropriate.

The Court is satisfied that the government has established probable cause that claimant's activities in operating Radio Maquina could constitute a violation of 47 U.S.C. § 301. Claimant admits that (1) he operated Radio Maquina, and (2) he does not currently possess, nor did he ever apply for, a license from the FCC. In addition, it is undisputed that claimant did not seek a waiver or amendment of the FCC regulation. "Because Claimant admits that he used the radio equipment to broadcast without an FCC license, there is no material issue remaining in regards to a violation of 47 U.S.C. § 301." *United States v. Any and all Radio Station Transmission Equip., Located at 1400 Laurel Ave.*, 976 F.Supp. 1255, 1257 (D.Minn. 1997). Upon the government's establishment of probable cause, the burden shifts to claimant to establish a defense to forfeiture by a preponderance of the evidence. *See* 47 U.S.C. § 510(c)(1); 19 U.S.C. § 1615; *U.S. v. 44133 Duchess Drive, Canton, Michigan*, 863 F.Supp. 492, 496 (E.D.Mich.1994); *U.S. v. One (1) 1966 Beechcraft Baron*, 788 F.2d 384, 387 (6th Cir.1986).

Claimant's defense is that the FCC regulation prohibiting the issuance of Class D licenses, 47 C.F.R. § 73.512(c),[12] i.e. licenses which govern low-power broadcast applica-

Thus, claimant contends he is not in "violation" of § 301.

12. 47 C.F.R. § 73.512(c) provides "Except in Alaska, no new Class D applications nor major

tions such as that attempted by claimant, is unconstitutional because it operates as an impermissible prior restraint on speech that is protected by the First Amendment.

The government responds by asserting that claimant first needs to apply for either a license or a waiver. If claimant would then receive an unfavorable disposition, claimant could appeal such decision to the Court of Appeals for the D.C. Circuit. *See* 47 U.S.C. § 402(b). In addition, the government notes that even if claimant were successful in obtaining the relief he is seeking, i.e., a declaration that the moratorium on Class D licenses is unconstitutional, he would still be in violation of 47 U.S.C. § 301 which requires the claimant to apply for and obtain a license before engaging in any broadcast activities.

The Court does not believe that claimant can demonstrate a likelihood of success on the merits. Claimant concedes he is operating without a license, and that § 301 requires obtaining a license before broadcasting. Claimant has not asserted any grounds which persuade this Court that his activities do not constitute a violation of § 301. As a remedy for violation of the Communications Act, Congress has provided a provision which permits *in rem* forfeiture of the affected property. Therefore, the Court believes that it is proper for the government to seek the forfeiture of the broadcast equipment pursuant to § 510.

 One of the defenses asserted by claimant to the forfeiture action is that 47 C.F.R. § 73.512(c) is unconstitutional. Claimant contends that this Court should rule that 47 C.F.R. § 73.512(c) is unconstitutional and that such a ruling by this Court should result in the dismissal of the forfeiture action. To the extent that claimant challenges the constitutionality of 47 C.F.R. § 73.512(c), the Court does not believe that it has jurisdiction to entertain claimant's regulatory challenge.

47 U.S.C. § 402(a) provides:

change applications by existing Class D stations are acceptable for filing except by existing Class D stations seeking to change frequencies."

Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

Chapter 158, as amended, comprises section 2341–2351 of Title 28. Section 2342 states in pertinent part:

[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47.

The Court believes, in view of the statutory scheme, that claimant must first seek a final decision by the FCC, and then, if necessary, appeal that unfavorable decision to the appropriate Court of Appeals. This conclusion is in accord with the district court's decision in *1400 Laurel Ave., supra*, in which the Court determined that a claimant's constitutional challenge to the identical provision under consideration in the instant case conferred jurisdiction "on the Court of Appeals pursuant to 47 U.S.C. § 402(a) –(b)." *1400 Laurel Ave.*, 976 F.Supp. at 1259.

Further, the Court believes that the doctrine of primary jurisdiction prohibits this Court from entertaining claimant's regulatory challenge as a defense to the forfeiture action. Simply stated, the doctrine of primary jurisdiction provides:

in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.

*Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952); *F.C.C. v. ITT World Communications, Inc.*, 466 U.S. 463, 468 n. 5, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984). "[W]here Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Whit-*

*ney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). "The doctrine of primary jurisdiction requires a party who wishes to challenge an FCC policy or practice to do so first through a motion for declaratory ruling with the FCC itself." *U.S. v. Neset*, 10 F.Supp.2d 1113, 1114 (D.N.D.1998).

The doctrine of primary jurisdiction was recently applied by Judge Cook in *United States v. Strawcutter*, 19 F.Supp.2d 738 (E.D.Mich.1998) where a claimant similarly challenged the constitutionality of the FCC's prohibition on the issuance of low-power broadcast licenses. Succinctly stated, Judge Cook concluded: "under the doctrine of primary jurisdiction, Strawcutter is precluded from initially raising his challenges to FCC regulations in any forum other than before the FCC since its regulations provide a means for such review." *Strawcutter*, at 745.

The doctrine of primary jurisdiction was similarly invoked by the United States District Court of North Dakota to dismiss a claimant's challenge to the validity of FCC regulations. *See U.S. v. Neset, supra*. In *U.S. v. Neset*, the district court, in the context of a forfeiture action, was confronted with a claimant's constitutional challenge to the FCC's regulatory provisions on microbroadcasting and determined "[t]he Communications Act ... gives the Courts of Appeals [sic] exclusive jurisdiction to review the FCC's declaratory rulings in those cases, as well, as all policies, practices, and regulations adopted by the FCC." *Neset*, 10 F.Supp.2d at 1114–1115 (citing 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)). In sum, the Court believes that the doctrine of primary jurisdiction is applicable to bar claimant's constitutional challenges to FCC regulations. To the extent that claimant relies on his constitutional challenge to FCC regulations as a defense to the forfeiture action, this is not a meritorious defense. Accordingly, claimant has not demonstrated a likelihood of success on the merits.

### 3. Substantial Harm to Others

Claimant asserts that the community will suffer substantial harm if Radio Maquina is

impaired from continuing its broadcasts. Claimant contends that the radio station serves an important purpose by filling a void in the Hispanic community for radio programming. In addition, claimant asserts that the station is losing advertising dollars because it is unable to broadcast. Assuming that claimant is correct in his assertion that the radio station serves a need in providing communication to a segment of the population, the Court does not believe that the absence of Hispanic radio programming outweighs what would amount to judicial sanction of an unlicenced radio station. Accordingly, the Court concludes that the alleged substantial "harm" to others does not outweigh the other factors counseling against issuance of an injunction.

### 4. Public Interest

The Court does not believe that the public interest would be served by granting the preliminary injunction in this instance. As the government notes "[t]he Communications Act of 1934 and its subsequent amendments exist as the Congressional response to the allocation of a finite resource among many competing entities." (Gov't Resp. at 11) (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 637–38, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). The licensing requirement of § 301 serves the public interest by providing an allocation mechanism for the finite resource of radio broadcast frequencies. Radio Maquina operated in contravention of the mandates of § 301. Therefore, the Court believes that it would not serve the public interest to sanction claimant's violation of § 301. This factor does not weigh in favor of the issuance of a preliminary injunction in favor of claimant.

The Court, therefore, denies claimant's request for the issuance of a preliminary injunction.

### *Claimant's Motion to Dismiss*

Claimant seeks dismissal of the government's complaint for forfeiture pursuant to FED.R.CIV.P. 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction because of the application of the doctrine of primary jurisdiction. FED.R.CIV.P. 12(b)(1) provides for the dismissal of a claim where a

court lacks jurisdiction over the subject matter of an action. Courts, in evaluating dismissal pursuant to FED.R.CIV.P. 12(b)(1), have provided for the division of dismissals under the rule into two general categories: facial attacks and factual attacks. *See Mortensen v. First Fed. Sav. and Loan Assoc.*, 549 F.2d 884 (3d Cir.1977); *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981); *U.S. v. Ritchie*, 15 F.3d 592 (6th Cir.1994); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir.1996). The Sixth Circuit has explained the distinction inherent in a district court's procedure for evaluation of the dismissals under the separate categories as follows:

> A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*U.S. v. Ritchie*, 15 F.3d at 598. Claimant's motion to dismiss the government's forfeiture complaint does not attack the sufficiency of the pleading; rather, it challenges the power of the district court to hear the claim as set forth in the pleadings. The Court, therefore, construes claimant's motion as a challenge to the factual existence of subject matter jurisdiction. Accordingly, the Court, applying the standards set forth above, will address claimant's argument that the Court should dismiss the government's complaint for forfeiture in view of the doctrine of primary jurisdiction.

Relying upon Judge Cook's recent decision in *Strawcutter*, claimant contends that this Court is without jurisdiction to hear the case in view of the doctrine of primary jurisdic-

tion. In *Strawcutter*, Judge Cook dismissed the government's complaint, in part, because:

> the Government's judicial action requires an inquiry into whether Strawcutter operated without a license in violation of the Communications Act or FCC regulations, matters which are peculiarly within the province and expertise of the FCC, the primary jurisdiction doctrine would appear to prohibit the Government from proceeding here without first obtaining a decision on that issue from the FCC.

*Strawcutter*, at 745. The government argued in *Strawcutter* that the claimant had the responsibility for seeking review of the contested regulation under the administrative procedures provided for in the Communications Act and that the absence of a final order from the FCC prevented claimant's ability to seek review of the constitutionality of the regulation.

However, Judge Cook, invoking the primary jurisdiction doctrine, ultimately determined that the government was equally responsible for the lack of a final FCC order. *See Strawcutter*, at 745 ("The Government's position ignores the power of the FCC to issue a cease and desist order to Strawcutter, which for some unexplained reason it choose not to exercise."). Although not explicit in the *Strawcutter* opinion, Judge Cook's decision implicitly placed upon the FCC the authority (and the obligation) to determine whether a § 301 violation had occurred. Therefore, Judge Cook determined that a predicate to the government's ability to institute a forfeiture action under § 510 in the district court was a determination of a § 301 violation in the form of a "final order" from the FCC. The *Strawcutter* Court went on to note that "the application of the primary jurisdiction doctrine does not place any undue burden upon the Government inasmuch as the Communications Act includes a procedure whereby the FCC may issue a cease and desist order which will enable the Government and Strawcutter to present their arguments." *Id.* at 746. Thus, claimant in the instant case asserts that this Court should similarly dismiss the government's forfeiture complaint under the doctrine of primary jurisdiction where the government

in this case did not seek and obtain a final order from the FCC prior to the commencement of the present action.

The Court respectfully disagrees with Judge Cook's decision in *Strawcutter*. When it becomes apparent to the government that an individual is operating a radio station in contravention of the Communications Act or regulations promulgated by the FCC, the government is provided with an array of remedies from which it may choose. The options consist of the FCC's initiation of: (1) an "in house" money forfeiture pursuant to 47 U.S.C. § 503; (2) an action for injunctive relief pursuant to the provisions of 47 U.S.C. § 401(a), (b); or (3) a criminal action pursuant to the provisions of 47 U.S.C. § 501. The fourth option, under which the government is proceeding in the instant case, permits the FCC to bring an action in the district court for any willful or knowing use of a radio frequency without a license or in violation of FCC regulations. 47 U.S.C. § 510(a). 47 U.S.C. § 510 provides:

> Any electronic, electromagnetic, radio frequency, or similar device or component thereof, used, sent, carried, manufactured, assembled, possessed, offered for sale, sold, or advertised with willful and knowing intent to violate section 301 or 302a of this title, or rules prescribed by the Commission under such sections, may be seized and forfeited to the United States.

47 U.S.C. § 510(a). Jurisdiction over forfeiture actions is properly vested in the district court which has jurisdiction over the property at issue. The provision of the Communications Act governing forfeiture, 47 U.S.C. § 504 provides, in pertinent part:

> The forfeitures provided for in this chapter shall be payable into the Treasury of the United States, and shall be recoverable, ... in a civil suit in the name of the United States brought in the district where the person or carrier has its principal operating office or in any district through which the line or carrier runs: *Provided,* That any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo....

47 U.S.C. § 504(a). Thus, reading the provisions together, this Court has jurisdiction

over the forfeiture action pursuant to 47 U.S.C. §§ 504(a) and 510(b). The specific provision in 47 U.S.C. § 504(a) provides that the action shall be a trial *de novo* in the district court in which claimant may present any legal or factual defenses to the forfeiture action.

■ The Court does not believe that it is an appropriate application of the doctrine of primary jurisdiction to require the government to first obtain agency review, culminating in the issuance of a "final order," before instituting the present forfeiture action. The Court finds nothing in its review of the Communications Act, or the forfeiture provisions, 47 U.S.C. §§ 504 and 510, which would predicate the institution of a forfeiture action in the district court on the government's obtaining of final review by the FCC; nor is there anything in the Communications Act that indicates that the FCC, rather than the district court, is the proper entity to determine whether a violation of § 301 has occurred. Furthermore, the provision on which the *Strawcutter* Court relied, 47 U.S.C. § 312(b), does not contain mandatory language with respect to the FCC's right to issue a cease and desist order. Specifically, 47 U.S.C. § 312 provides, in pertinent part:

> Where any person (1) has failed to operate substantially as set forth in a license, ... (3) has violated or failed to observe any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States, the Commission *may* order such person to cease and desist from such action.

47 U.S.C. § 312(b) (emphasis added). The section authorizing the FCC to issue a cease and desist order explicitly states that the agency may choose to do so upon ascertaining that a broadcaster is in violation of its regulations. In this Court's opinion, the language of the Communications Act, while authorizing the issuance of a cease and desist order, does not impose a requirement upon the government to seek agency review before commencing forfeiture proceedings in the district court. In addition, § 312 does not

contain any language which would suggest that the issuance of a cease and desist order is a necessary prerequisite to the finding of a § 301 violation.

Claimant's reliance on *United States v. Dunifer,* 997 F.Supp. 1235, 1236 (N.D.Cal. 1998) and *United States v. Neset,* 10 F.Supp.2d 1113 (D.N.D.1998) for the proposition that "other federal courts have held that the doctrine precludes judicial determination of whether the Communications Act has been violated prior to a determination by the FCC" is unavailing. (Claimant's Supp.Br. at 3). In *Dunifer,* the claimant operated micro radio station "Free Radio Berkely" without a license. The government brought a motion for injunctive and declaratory relief against Dunifer for a violation of § 301. At the time of the proceeding in the district court, there was pending, before the FCC, proceedings in which Dunifer was asserting a constitutional challenge to the regulations relating to the issuance of Class D licenses. Although the district court acknowledged that the United States had shown probable success on the merits, it chose to deny the government's motion for a preliminary injunction so that, "[t]he issue of the constitutionality of the Class D regulations could first be addressed by the FCC...." *Id.* at 1238. The fact that a district court exercised its discretion to deny the government's motion for a preliminary injunction to permit the FCC to rule on a constitutional challenge that was *presently pending* before the FCC does not persuade this Court that a determination by the FCC with respect to the constitutionality of the regulations is a prerequisite to forfeiture proceedings in the district court. Furthermore, *Dunifer* supports the conclusion that a constitutional challenge to the regulations asserted by claimant in this proceeding must be presented in proceedings before the FCC and not before the district court. "Mr. Dunifer's contention that the FCC does not have jurisdiction to determine the constitutionality of its regulations is incorrect." *Id.* at 1240.[13]

Claimant's reliance on *Neset* is similarly unpersuasive. The district court in *Neset*

---

**13.** The Court also noted that since Dunifer acknowledged that he had not applied for a license or a waiver pursuant to the Class D regulations,

the Class D regulations have not been applied to him, "[a]nd he has no standing to bring an as-applied challenge to them." *Id.* at 1240.

merely found that, to the extent claimant's motions challenged regulations of the FCC, "[t]he doctrine of primary jurisdiction requires a party who wishes to challenge an FCC policy or practice to do so first through a motion for declaratory ruling with the FCC itself." *Neset*, 10 F.Supp.2d at 1114. *Neset* does not hold that the district court lacks jurisdiction over a forfeiture proceeding because the government did not first obtain a constitutional ruling in a proceeding before the FCC.

At the hearing on October 29, 1998, counsel for claimant argued that this Court lacks jurisdiction to hear this forfeiture action asserting that primary jurisdiction rests with the FCC, i.e., that the determination of whether or not § 73.512(c) is constitutional is an issue that must be addressed by the FCC under the "primary jurisdiction" doctrine. Assuming counsel is correct that the constitutionality of the regulation must be addressed by the FCC, *see Dunifer* and *Neset, supra,* in this Court's opinion, it is claimant's burden to institute proceedings with the FCC in which the constitutionality of 47 C.F.R. § 73.512(c) can be challenged. Furthermore, even if § 73.512(c) were deemed unconstitutional by the FCC, claimant would still be in violation of § 301 if he engaged in broadcasting without obtaining a license.[14]

In sum, since claimant did not obtain a license as required, he has violated § 301. 47 U.S.C. § 510 authorizes the institution of forfeiture proceedings where there has been a violation of § 301. Unquestionably, the district court has jurisdiction to hear forfeiture proceedings, *see Dougan v. FCC,* 21 F.3d 1488, 1491 (1994), and the government is entitled, under 47 U.S.C. §§ 510(b) and 504, to pursue forfeiture of claimant's equipment in a district court which has jurisdiction over the property. Section 504's provision of a trial *de novo* in the district court offers claimant an opportunity to present to this Court any factual or legal defenses to the government's imposition of the forfeiture. Therefore, the Court does not believe that the doctrine of primary jurisdiction divests this Court of its subject matter jurisdiction over the government's complaint for forfeiture.

For all of the foregoing reasons, the Court denies the claimant's motion to dismiss the government's complaint.

An order consistent with this Opinion shall issue forthwith.

---

**14.** If claimant is challenging the constitutionality of § 301, such challenge must fail. "If Mr. Dunifer were challenging the constitutionality of the statutes, he would fail because the statutes have been found to be constitutional by the Supreme Court." *Dunifer,* 997 F.Supp. at 1241.