*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0069P (6th Cir.)
File Name:  00a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

98-2129
UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

            *v.*

ANY AND ALL RADIO
STATION TRANSMISSION
EQUIPMENT, RADIO
FREQUENCY POWER
AMPLIFIERS, RADIO
FREQUENCY TEST EQUIPMENT
AND ANY OTHER EQUIPMENT
ASSOCIATED WITH OR USED
IN CONNECTION WITH THE
TRANSMISSION AT 97.7 MHZ,
LOCATED AT 2903 BENT OAK
HIGHWAY, ADRIAN,
MICHIGAN,
            *Defendant-Appellee,*

RICK STRAWCUTTER,
            *Claimant-Appellee.*

Nos. 98-2129/2396

1

98-2396
UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

ANY AND ALL RADIO
STATION TRANSMISSION
EQUIPMENT, RADIO
FREQUENCY POWER
AMPLIFIERS, RADIO
FREQUENCY TEST EQUIPMENT
AND ANY OTHER EQUIPMENT
ASSOCIATED WITH OR USED
IN CONNECTION WITH THE
RADIO TRANSMISSIONS ON
FREQUENCY 95.9 MHZ,
LOCATED AT 3968 WEST
VERNOR HIGHWAY, DETROIT,
MICHIGAN 48216,
              *Defendant-Appellant,*
MAQUINA MUSICAL,
INCORPORATED,
              *Claimant-Appellant,*
JUAN V. MARINEZ, CATALINA
MARTINEZ, IGNACIO CAMPOS,
JORGE CANCHOLA, SERGIO
VALLEJO,
              *Intervenors-
Counterplaintiffs-Appellants.*

28 U.S.C. § 1291 in the absence of special factors, none of which are present here. *Cf. Lickiss v. Drexler,* 141 F.3d 1220, 1222 (7th Cir.) (noting that a denial of a motion to dismiss based on qualified immunity is considered a final, appealable order if there are no material facts in dispute, because part of the harm sought to be averted by the doctrine of immunity is the necessity of standing trial), *cert. denied,* 119 S. Ct. 513 (1998). The denial is also not an immediately appealable interlocutory order within the meaning of 28 U.S.C. § 1292(a)(1). Finally, the doctrine of pendent appellate jurisdiction does not apply, because the issue of whether Maquina Musical's motion for a preliminary injunction should have been granted is not "coterminous with, or subsumed in" the issue of whether its motion to dismiss the government's complaint should have been granted. *See Brennan v. Twp. of Northville,* 78 F.3d 1152, 1158 (6th Cir. 1996). We therefore find no basis to consider Maquina Musical's motion to dismiss as part of the present appeal.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court in No. 98-2129 (Strawcutter), which dismissed the government's forfeiture case sua sponte pursuant to the doctrine of primary jurisdiction, and **REMAND** the case for further proceedings. We **REMAND** No. 98-2396 (Maquina Musical) to the district court for reconsideration in light of its determination that the doctrine of primary jurisdiction precluded it from considering Maquina Musical's "constitutional defenses" to the government's forfeiture action. Concerning Maquina Musical's appeal from the district court's denial of its motion to dismiss the government's forfeiture complaint, we **DISMISS** the appeal for lack of jurisdiction.

Appeal from the United States District Court for the Eastern District of Michigan at Detroit. Nos. 97-73527; 98-74368—Julian A. Cook, Jr. and Patrick J. Duggan, District Judges.

Argued: December 10, 1999

Decided and Filed: February 25, 2000

Before: JONES, COLE, and GILMAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Jacob M. Lewis, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for United States of America. Patrick M. Edwards, CONSTITUTIONAL LITIGATION ASSOCIATION, Detroit, Michigan, for Claimants. **ON BRIEF:** Jacob M. Lewis, Robert S. Greenspan, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for United States of America. Kevin S. Ernst, Detroit, Michigan, Katharine M. Omansiek, Detroit, Michigan, for Appellants. Patrick M. Edwards, CONSTITUTIONAL LITIGATION ASSOCIATION, Detroit, Michigan, for Claimants.

_____

### OPINION

_____

RONALD LEE GILMAN, Circuit Judge. The principal question presented by these consolidated appeals is whether, under the doctrine of primary jurisdiction, district courts may decline to adjudicate in rem forfeiture actions brought by the United States against persons who operate radio stations without licenses. For the reasons set forth below, we conclude that the answer is no. We therefore **REVERSE** the

judgment of the district court in No. 98-2129 (Strawcutter), which dismissed the government's forfeiture case sua sponte pursuant to the doctrine of primary jurisdiction, and **REMAND** the case for further proceedings. We also **REMAND** No. 98-2396 (Maquina Musical) to the district court for reconsideration in light of its determination that the doctrine of primary jurisdiction precluded it from considering Maquina Musical's "constitutional defenses" to the government's forfeiture action. Concerning Maquina Musical's appeal from the district court's denial of its motion to dismiss the government's forfeiture complaint, we **DISMISS** the appeal as premature.

## I. BACKGROUND

### A. No. 98-2129 (Strawcutter)

On November 12, 1996, the manager of a licensed FM radio station in Toledo, Ohio telephoned the Federal Communications Commission (FCC) and complained that the signal from a radio station identifying itself as "Radio Free Lenawee" was interfering with his station's signal. During the preceding two weeks, a number of other persons had also complained to the FCC's Detroit office about Radio Free Lenawee's transmissions.

On November 14, 1996, the FCC sent a field agent to investigate the complaints. An unlicensed radio station identifying itself as Radio Free Lenawee was found to be broadcasting from a building at 2903 Bent Oak Highway, in Adrian, Michigan, at a frequency of 97.7 megahertz. The FCC later determined that Radio Free Lenawee was broadcasting at a strength of 29,625 microvolts per meter at a distance of over half a mile, far exceeding that permitted for unlicensed radio stations (a maximum of 250 microvolts per meter at a distance of three meters). *See* 47 C.F.R. § 15.239(b).

Rick Strawcutter, Radio Free Lenawee's owner and operator, took the position that he had a constitutional right to

district court's conclusion. As previously stated in Part II.B.1.a. above, nobody has a First Amendment right to hear radio broadcasts from a station that does not have a First Amendment right to broadcast them.

#### d. Public interest

Finally, the district court concluded that the public interest did not favor granting the injunction because the government has an interest in the uniform and consistent application of the Communications Act. Maquina Musical argues that "the district court erred as a matter law and fact" because the "policy of free speech is the very cornerstone of a democratic society." This is undoubtedly true, but we think that Maquina Musical avoids the issue by defining the question considerably more abstractly than the Supreme Court has been willing to do. As noted above, the Court has made it quite clear that unlicensed broadcasting is not considered free speech protected by the First Amendment. *See* Part II.B.1.a. above.

We express no opinion on whether the constitutionality of the challenged FCC regulation is an appropriate consideration in deciding the merits of this case. The district court may have been right when it concluded that even if the challenged regulation is unconstitutional, the statute is valid, and that Maquina Musical's violation of the statute is the beginning and end of the government's forfeiture case. But before this court decides the issue, it should be resolved on the merits by the district court. We will therefore remand this case to the district court so that it can determine whether it wishes to adhere to its reasoning in light of its ability to consider the constitutionality of the FCC regulations.

#### 2. *Motion to dismiss*

Maquina Musical is also appealing from the portion of the district court's order that denied the station's motion to dismiss the government's complaint. An order denying a motion to dismiss is not a "final decision" appealable under

*Currency,* 985 F.2d 245, 250 (6th Cir. 1993) (applying the Fourth Amendment exclusionary rule in a forfeiture case). We believe that this makes it even less likely that Congress enacted a statute that allows the government to forfeit a person's property while denying the owner the right to defend himself by challenging the legal basis of the government's forfeiture case.

Although we conclude that the district court erred in holding that it lacked jurisdiction to adjudicate Maquina Musical's arguments, this does not mean that Maquina Musical is any closer to demonstrating that it is likely to succeed on the merits. With one exception, the cases Maquina Musical relies upon for the boilerplate propositions that restrictions on First Amendment rights must be "narrowly tailored" and that "prior restraints" on protected free speech are presumptively invalid have nothing to do with radio broadcasting, much less with unlicensed radio broadcasting. The one exception is *FCC v. League of Women Voters of California,* 468 U.S. 364 (1984), which concerned the constitutionality of a statute prohibiting licensed broadcasters that accepted federal funding from engaging in "editorializing." Even in that opinion, the Court repeatedly observed that broadcasting may legitimately be regulated in ways that would be unconstitutional in other contexts. *See id.* at 374 ("[B]ecause broadcast regulation involves unique considerations, our cases have not followed precisely the same approach that we have applied to other media").

   c.   Substantial harm to others

The district court concluded that it did "not believe that the absence of Hispanic radio programming outweighs what would amount to judicial sanction of an unlicensed radio station." This appears to be more a weighing of the "substantial harm" factor against the "public interest" factor than strictly a consideration of whether the inability of Maquina Musical's audience to hear the station's broadcasts constitutes substantial harm. We agree, however, with the

continue his radio broadcasts without interference from the government. FCC inspectors sought to inspect Radio Free Lenawee's premises. Strawcutter refused them permission to do so. The FCC notified Strawcutter by letter that he was violating the Communications Act of 1934, 47 U.S.C. §§ 151-614. Specifically, the letter stated that (1) the station's broadcast strength exceeded the maximum allowed by 47 C.F.R. § 15.239(b), (2) the station was violating 47 U.S.C. § 301 because it was operating an unlicensed transmitter, and (3) operating a transmitter without a license subjects the operator to the criminal penalties described in 47 U.S.C. § 501. Strawcutter responded with a letter in which he explained that he had "come to a sincerely held conclusion that the [FCC] in reality has no Constitutional regulatory power over FM stations which run a power level less than 100 watts."

Between the end of November of 1996 and the end of February of 1997, the FCC conducted six field tests. Those tests established that Radio Free Lenawee, which was still unlicensed, was continuing to transmit, and was doing so in excess of the permissible signal strength.

On July 22, 1997, the government filed in the United States District Court for the Eastern District of Michigan a complaint in which it sought, pursuant to 47 U.S.C. § 510(a), the civil in rem forfeiture of the radio transmission equipment located at 2903 Bent Oak Highway, the source of Radio Free Lenawee's broadcasts. Strawcutter filed a claim of ownership on August 5, 1997, and an answer approximately two weeks later. In his answer, Strawcutter asserted that the FCC regulation that prohibits unlicensed "microbroadcasting" was invalid because it violated his rights under the First Amendment, the Equal Protection and Due Process Clauses of the Fifth Amendment, Article XIX of the United Nations Declaration of Human Rights, and Article XIX of the International Covenant on Civil and Political Rights. He also argued that the FCC regulation is inconsistent with its statutory mandate to "encourage the larger and more effective

use of radio in the public interest," as set forth in 47 U.S.C. § 303(g).

Strawcutter's arguments centered around the FCC regulations found at 47 C.F.R. Part 73. Those regulations classify FM radio broadcast licenses as Class A, Class B, Class C, or Class D, depending on the station's transmission power, antenna height, and the area or place from which the broadcasts emanate. *See* 47 C.F.R. §§ 73.210-.211. The FCC once granted Class D licenses to "microbroadcasters," but in 1978 adopted a regulation effectively preventing new Class D stations from operating, except in Alaska. *See* 47 C.F.R. § 73.512(c) (providing that no new Class D applications would be accepted, except in Alaska or by existing Class D stations seeking to change frequency).

We note that during the pendency of this appeal, the FCC has changed its position on microbroadcasting. *See In the Matter of Creation of a Low Power Radio Service*, FCC 99-6, 14 FCCR 2471, at ¶ 1 (released Feb. 3, 1999) (proposing the creation of two new classes of low-power FM radio stations, and seeking comment "on whether to establish a third, 'microradio' class of low power radio service that would operate in the range of 1 to 10 watts."); *In the Matter of Creation of Low Power Radio Service*, FCC 00-19, — FCCR —, 2000 WL 85304, at ¶ 1 (released January 27, 2000) (authorizing, among other things, the licensing of low-power FM stations operating at a maximum of 10 watts). Notwithstanding this change in policy, however, Strawcutter apparently will still not be eligible for a broadcasting license. *See In the Matter of Creation of Low Power Radio Service*, 2000 WL 85304, at ¶¶ 51-55 (announcing that microbroadcasters who had broadcast without licenses in the past will now be eligible for low-power broadcast licenses, but only if they voluntarily ceased broadcasting no later than February 26, 1999 "without specific direction to terminate by the FCC," or ceased broadcasting within 24 hours after being advised to do so by the FCC).

Maquina Musical also contends that the FCC regulation announcing the moratorium on Class D licenses, 47 C.F.R. § 73.512(c), was an unconstitutional prior restraint on speech. In response, the government argues that even if the regulation was ultimately held to be unconstitutional, it would not matter, because the government's forfeiture case begins and ends with Maquina Musical's violation of 47 U.S.C. § 301. The district court concluded, however, that it lacked jurisdiction to entertain Maquina Musical's constitutional defenses because 28 U.S.C. § 2342 provides that the courts of appeals have exclusive jurisdiction "to enjoin, set aside, suspend . . . or to determine the validity of . . . all final orders of the [FCC] . . . ."

We disagree, "for the simple reason that no FCC order is being challenged." *United States v. Any and All Radio Station Transmission Equipment (Laurel Avenue),* 169 F.3d 548, 554 (8th Cir.) (M. Arnold, J., concurring in the result), *reh'g granted,* 182 F.3d 1026 (8th Cir. 1999). Indeed, as Judge Morris Arnold said in his short but well-reasoned opinion in *Laurel Avenue*: "Until today I had not supposed that anyone could plausibly maintain that any court of the United States, properly seized of jurisdiction of a suit, did not also have jurisdiction to consider constitutional defenses to that suit." *See Laurel Avenue,* 169 F.3d at 554 (M. Arnold, J., concurring in the result). *Laurel Avenue* involved facts that are virtually identical to those of the present case, in that the government sought the in rem forfeiture of an unlicensed microbroadcaster's radio transmission equipment.

Congress presumably could have created a streamlined forfeiture remedy that excluded certain defenses by giving claimants the opportunity to raise those defenses in some other forum. But it did not do so. Forfeiture actions, although nominally civil, are quasi-criminal in nature. *See One 1958 Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693, 700 (1965). As a consequence, some of the protections to which criminal defendants are entitled also apply in forfeiture cases. *See, e.g., United States v. $53,082.00 in United States*

court erred on the side of overgenerosity to Maquina Musical in assessing whether it had demonstrated a risk of irreparable harm. *Cf. Free Speech ex rel. Ruggiero*, 200 F.3d at 65 (concluding that the government had established that it would suffer irreparable harm without an injunction "simply by establishing that plaintiffs were broadcasting without a license").

   b.   Likelihood of success on the merits

   The district court found that Maquina Musical had not demonstrated that it was likely to prevail on the merits. In reaching this conclusion, the district court noted that it was undisputed that Maquina Musical had broadcasted without a license and, indeed, that it had never applied for a license, a waiver, or an amendment to the pertinent FCC regulations barring microbroadcasting. This, the district court concluded, was sufficient for the government to establish probable cause that Maquina Musical had violated 47 U.S.C. § 301 (which prohibits radio broadcasting without a license) and, by extension, that its broadcasting equipment was subject to forfeiture under 47 U.S.C. § 510(a), which subjects to forfeiture "any electronic, electromagnetic, radio frequency, or similar device, or component thereof . . . used . . . with willful and knowing intent to violate [47 U.S.C. §] 301 [or FCC regulations promulgated under § 301]."

   Because Maquina Musical produced absolutely no evidence to rebut its violation of a facially valid federal statute, we believe that the district court was correct in its ultimate conclusion that the station had failed to demonstrate that it was likely to succeed on the merits. *See United States v. Certain Real Property 566 Hendrickson Blvd., Clawson, Oakland County, Mich.*, 986 F.2d 990, 995 (6th Cir. 1993) (noting that in forfeiture cases, the government is entitled to a judgment of forfeiture upon an unrebutted showing of probable cause).

   On June 9, 1998, the government moved for summary judgment, taking the position that it was entitled to summary judgment as a matter of law because there was no material issue of fact—indeed, the facts were essentially uncontroverted—as to whether Strawcutter had broadcast without a license despite being warned by the FCC that it was unlawful for him to do so. The only disputed issues were the validity of the regulations that Strawcutter concededly violated, and whether the authorizing statutes were unconstitutional or in conflict with a treaty. Those issues, the government argued, were part of a "regulatory challenge" that was "not justiciable" in the district court, because "Congress vested exclusive jurisdiction in the United States Courts of Appeals, whether that review involves FCC regulations generally or specific licensing decisions."

   The government claimed that in challenging the legal basis of the statutes or regulations with which he disagreed, Strawcutter's sole options were to apply to the FCC for a broadcast license or to petition the FCC either to amend its regulations or to waive their application to him. Strawcutter argued that those administrative remedies offered him no realistic prospect of relief, because the FCC had an unyielding policy not to waive the regulations that bar microbroadcasters from transmitting. As many other microbroadcasters around the country have done, Strawcutter argued that the FCC was "being used as the tool of powerful broadcast corporations" that wished to maintain cartel-like control over the airwaves, at the cost of suppressing potential competitors and depriving the listening public of "low-cost broadcasting on community issues as an alternative to mainstream perspectives."

   The district court, in a memorandum and order dated August 7, 1998, denied the government's motion and, invoking sua sponte the doctrine of primary jurisdiction, dismissed the action for lack of subject matter jurisdiction. *See United States v. Any and All Radio Station Equipment (Strawcutter),* 19 F. Supp. 2d 738 (E.D. Mich. 1998).

## B.   No. 98-2396 (Maquina Musical)

On April 16, 1998, the FCC's Detroit office received a complaint about an unlicensed FM radio station broadcasting at a frequency of 95.9 megahertz. That day, FCC agents went to 3968 West Vernor Highway in Detroit, and detected the emission of FM broadcast signals at 95.9 megahertz that were 146 times the maximum strength permitted by FCC regulations for unlicensed broadcasts. On April 21, 1998, the agents returned and detected FM broadcast signals that were nearly 8,900 times the maximum permitted for unlicensed broadcasts. The agents entered the premises of the station, which was called Radio Maquina, and spoke with Pedro Zamora, the president of Maquina Musical, which owns Radio Maquina. They told Zamora that Radio Maquina's broadcasts exceeded the maximum strength permitted by FCC regulations and that the broadcasts violated 47 U.S.C. § 301. It is undisputed that Maquina Musical did not have a broadcast license, and that it had never applied for one.

On May 4, 1998, the agents determined that Radio Maquina was continuing to broadcast. That day, the agents determined that the broadcast signals were more than 7,600 times the maximum permissible strength. The FCC's Detroit office sent Zamora a letter on May 12, 1998, again informing him that the broadcasts violated 47 U.S.C. § 301 and demanding that he cease broadcasting forthwith, or face numerous potential penalties, including criminal prosecution and civil forfeiture of his broadcasting equipment. Zamora replied to the FCC's letter by demanding an administrative hearing before any forfeiture proceedings against him were instituted. During August of 1998, the FCC determined that Radio Maquina was still broadcasting, and was continuing to do so well in excess of the maximum strength permitted by FCC regulations.

On October 7, 1998, the government filed a civil complaint in the United States District Court for the Eastern District of Michigan, seeking the forfeiture of Maquina Musical's

seizure of his broadcasting equipment is sufficient to demonstrate irreparable injury." *See Maquina Musical,* 29 F. Supp. 2d at 396.

It need not have done so. As the Supreme Court has observed, "[t]he right of free speech does not include . . . the right to use the facilities of radio without a license." *National Broadcasting Co. v. United States,* 319 U.S. 190, 227 (1943). In *National Broadcasting Co.,* the Supreme Court broadly affirmed the Communications Act and its licensing standard of "public interest, convenience, or necessity" as valid exercises of congressional power, and held that denying a license on that ground, "if valid under the Act, is not a denial of free speech." *Id. See also Free Speech ex rel. Ruggiero v. Reno*, 200 F.3d 63, 64-65 (2d Cir. 1999) (per curiam) (rejecting the argument of unlicensed microbroadcasters that the FCC's broadcast licensing scheme is subject to public forum analysis and strict judicial scrutiny).

In the present case, Maquina Musical never applied for a broadcast license. For that reason, neither it nor Zamora has any First Amendment interest in its broadcasts. We therefore conclude that Maquina Musical lacks any plausible claim to the presumption of irreparable harm. Maquina Musical also asserts that members of its listening audience—who intervened in this action and filed affidavits in support of its motion for injunctive relief—also have a First Amendment right "to hear the political, cultural and educational information conveyed to their community." But it follows that nobody has a First Amendment right to hear radio broadcasts from a station that does not have a First Amendment right to broadcast them. *Cf. Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599 (1980) (Stewart, J., concurring) (observing that the right to listen is implied by the right to speak).

In any event, we do not mean to suggest that this is the end of the analysis in determining whether Maquina Musical can possibly prevail in this case. Our point is just that the district

erroneous findings of fact." *E.g., Schenck v. City of Hudson,* 114 F.3d 590, 593 (6th Cir. 1997).

Taken literally, the standard is difficult to understand. The idea of discretion connotes a reasoned, properly informed, deliberate choice between legally permissible alternatives. No judge deliberately chooses to apply an incorrect legal standard, misapply a correct legal standard, or rely upon clearly erroneous factual findings. Presumably, the standard as articulated in *Schenck* and numerous other cases is a shorthand way of expressing the idea that this court ordinarily extends a high degree of deference to the district court's decision, but does so only if the district court properly understood the pertinent law and applied it in a defensible manner to the facts as they appear in the record. Otherwise, affording deference to the district court makes little sense.

With this understanding in mind, reviewing the district court's order denying a preliminary injunction to Radio Maquina in light of the pertinent factors—whether the movant is likely to succeed on the merits, whether the movant would suffer irreparable harm without the injunction, whether an injunction would cause substantial harm to others, and whether an injunction would be in the public interest—becomes relatively straightforward. *See, e.g., Connection Distribution Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1496 (1999) (setting forth the pertinent factors for determining whether a preliminary injunction should be granted).

    a.   Irreparable harm

Maquina Musical's argument regarding irreparable harm is based on the premise that barring it from broadcasting would abridge both its First Amendment right to free speech and the First Amendment interests of its listeners to hear Radio Maquina's broadcasts. The district court assumed for the sake of argument that Zamora's "alleged deprivation of his First Amendment right to free speech by the government's

broadcasting equipment. The next day, the government executed a writ of entry and a warrant of arrest, and proceeded to arrest (that is, seize) the equipment. On October 9, 1998, Maquina Musical—joined by several Radio Maquina listeners who were permitted to intervene in the action—filed a "verified complaint" in which it applied for a temporary restraining order and moved for a preliminary injunction, a dismissal of the government's forfeiture complaint for lack of subject matter jurisdiction, and an order quashing the in rem arrest warrant. After a hearing, the district court denied the application for a temporary restraining order. Subsequently, in a memorandum and order dated November 6, 1998, the district court denied the remainder of the relief sought by Maquina Musical. *See United States v. Any and All Radio Station Transmission Equipment (Maquina Musical),* 29 F. Supp. 2d 393 (E.D. Mich. 1998).

In denying Maquina Musical's motion for a preliminary injunction, the district court assumed for the sake of argument that Maquina Musical could demonstrate that it would suffer irreparable harm without the injunction, *see Maquina Musical,* 29 F. Supp. 2d at 396 (*citing Connection Distributing Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998), for the proposition that even brief deprivations of First Amendment freedoms constitute irreparable injury), and concluded that the risk of substantial harm to others was not great. The district court, however, found that Maquina Musical's likelihood of success on the merits was low and that the public interest did not favor allowing it to broadcast without a license during the pendency of the proceedings. Balancing these factors, the district court concluded that Maquina Musical was not entitled to a preliminary injunction.

## II.  ANALYSIS

### A.  No. 98-2129 (Strawcutter)

The doctrine of primary jurisdiction "arises when a claim is properly cognizable in court but contains some issue within

the special competence of an administrative agency." *United States v. Haun,* 124 F.3d 745, 749 (6th Cir. 1997) (*citing Reiter v. Cooper,* 507 U.S. 258, 268 (1993)). When the doctrine applies, court proceedings are stayed so that the agency may bring its special competence to bear on the issue. *See id.* Unfortunately, "[n]o fixed formula exists for applying the doctrine[.]" *United States v. Western Pacific. R. Co.,* 352 U.S. 59, 64 (1956)). Rather, "[i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.*

Those reasons, broadly speaking, are the desire for uniformity in adjudication and the belief that the decisionmaker with the most expertise and broadest perspective regarding a statutory or regulatory scheme will be most likely to resolve the issue correctly. *See id.* The doctrine has even been applied to the government itself. *See Far East Conference v. United States,* 342 U.S. 570 (1952) (ordering an antitrust action brought by the United States as a shipper dismissed pursuant to the doctrine of primary jurisdiction following the intervention of, and motion to dismiss by, the Maritime Board, the relevant federal agency).

But the doctrine does not apply when the specially competent agency is itself the plaintiff. *See, e.g., United States v. Alcon Laboratories,* 636 F.2d 876, 888 (1st Cir. 1981) ("[D]eference to an agency's primary jurisdiction makes little sense in the context of an enforcement proceeding initiated by the agency."); *ICC v. All-American, Inc.,* 505 F.2d 1360, 1362 (7th Cir. 1974) ("It has been suggested . . . that, in cases where the appropriate administrative body is before the court, the doctrine should not apply since a principal function of the rule, acquainting the court with the agency's position concerning the matter, has been satisfied."); *CAB v. Aeromatic Travel Corp.,* 489 F.2d 251, 254 (2d Cir. 1974) ("[W]hen the agency chooses to go to the district court for enforcement, it makes little sense to refer the very question at issue to the agency."). Indeed, as the Second and Seventh

Circuits have noted, a federal agency's decision to pursue a judicial remedy rather than an administrative one speaks volumes about its views regarding the necessity of administrative expertise. *See All-American, Inc.,* 505 F.2d at 1363; *ICC v. Maine Central R. Co.,* 505 F.2d 590, 594 (2d Cir. 1974) ("[T]he very institution of suit in the courts by the relevant administrative body represents an exercise of its 'special competence.'").

In essence, the district court held that a statute expressly authorizing the government to initiate a civil action in the district courts cannot be invoked by the government when it sues on behalf of the very agency charged by the statute with special competence over the regulatory issues in question. *See* 47 U.S.C. § 510 (providing that the illegal use of broadcasting equipment subjects the equipment to seizure and forfeiture if the equipment was used "with willful and knowing intent" to violate license requirement) and 28 U.S.C. § 1355 (vesting the district courts with original jurisdiction over "any action or proceeding" for forfeiture "incurred under any Act of Congress" other than those within the jurisdiction of the Court of International Trade). We cannot agree, and therefore reverse the district court's order dismissing this action for lack of subject-matter jurisdiction.

## B. No. 98-2396 (Maquina Musical)

### 1. Preliminary injunction

Whether a preliminary injunction should be granted is a decision left to the district court's sound discretion. *See, e.g., Allied Systems, Ltd. v. Teamsters Nat'l Automobile Transporters Industry Negotiating Committee,* 179 F.3d 982, 985-86 (6th Cir.), *cert. denied,* 120 S. Ct. 401 (1999). On appeal, our review focuses on whether the district court abused that discretion. This court has said that a district court, in deciding whether to grant an injunction, abuses its discretion when it "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly